No. 14-56755

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

## DONALD M. LUSNAK,

### Plaintiff-Appellant,

### v.

## BANK OF AMERICA, N.A.,

### Defendant-Appellee.

---

On Appeal From The United States District Court
For the Central District Of California
Hon. George H. King, District Judge

---

## BRIEF OF AMICUS CURIAE OFFICE OF THE
## COMPTROLLER OF THE CURRENCY IN SUPPORT OF
## APPELLEE'S PETITION FOR REHEARING EN BANC

---

KAREN SOLOMON
CHARLES M. STEELE
GREGORY F. TAYLOR
DOUGLAS B. JORDAN
MICHAEL K. MORELLI
Office of the Comptroller of the
Currency
400 7th Street S.W.
Washington, DC 20001
(202) 649-6300

*Counsel for Amicus Curiae*
*Office of the Comptroller of the*
*Currency*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................ i

**INTRODUCTION** ....................................................................................... 1

**STATEMENT OF THE CASE** .................................................................. 2

   I.     THE OFFICE OF THE COMPTROLLER OF THE CURRENCY ............. 2

   II.    NATIONAL BANK POWERS TO CONDUCT MORTGAGE LENDING AND TO OFFER AND SERVICE ESCROW ACCOUNTS ...................... 2

   III.   THE DODD-FRANK ACT EFFECTIVE DATES AND THE TRANSACTIONS IN THIS CASE ................................................... 3

**STANDARDS OF REVIEW** ...................................................................... 4

**ARGUMENT** ............................................................................................. 5

   I.     THE PETITION SHOULD BE GRANTED .................................... 5

      A.  The Panel Decision Fundamentally Misapprehends *Barnett* ...................... 5

      B.  The OCC's Interpretation of *Barnett* Has Been Adopted By the Supreme Court and Multiple Courts of Appeals, Including the Ninth Circuit, and is Reflected in the Escrow Regulation ........................................................... 11

      C.  The District Court Correctly Applied *Barnett* Principles To Hold the California Escrow Statute Preempted ........................................ 15

      D.  Dodd-Frank Does Not Control the Outcome in This Case ........................ 16

**CONCLUSION** ........................................................................................ 18

**CERTIFICATE OF COMPLIANCE** ..................................................... 19

**CERTIFICATE OF SERVICE** ............................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Am. Bankers Ass'n v. Lockyer*,
249 F. Supp. 2d 1000 (E.D. Cal. 2002) (E.D. Cal. 2002) ..................................... 15

*Anderson Nat'l Bank v. Luckett*,
321 U.S. 233 (1944) ................................................................................................ 9

*Ass'n of Banks in Ins. v. Duryee*,
270 F.3d 397 (6th Cir. 2001) ........................................................................ 14, 18

*Auer v. Robbins*,
519 U.S. 452 (1997) ................................................................................................ 5

*Bank of Am. v. City and Cty. of San Francisco*,
309 F. 3d 551 (9th Cir. 2002) .............................................................................. 14

*Bank One, Utah, N.A. v. Guttau*,
190 F.3d 844 (8th Cir. 1999) .............................................................................. 14

*Baptista v. JP Morgan Chase Bank, N.A.*,
640 F.3d 1194 (11th Cir. 2011) ........................................................................... 14

*Barnett Bank of Marion County, N.A. v. Nelson*,
517 U.S. 25 (1996) .......................................................................................... Passim

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ........................................................................................ 5, 11

*Franklin Nat'l Bank of Franklin Square v. New York*,
347 U.S. 373 (1954) .................................................................................... 9, 10, 12

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ........................................................................................ 5, 16

*Gutierrez v. Wells Fargo Bank, N.A.*,
704 F.3d 712 (9th Cir. 2012) .............................................................................. 14

*Hines v. Davidowitz,*
  312 U.S. 52 (1941) ...................................................................... 8, 9, 15

*Lusnak v. Bank of Am.,*
  883 F.3d 1185 (9th Cir. 2018) ...............................................Passim

*Martinez v. Wells Fargo Home Mortg., Inc.,*
  598 F.3d 549 (9th Cir. 2010) ....................................................... 5, 14

*McClellan v. Chipman,*
  164 U.S. 347 (1896).......................................................................... 9

*Monroe Retail, Inc. v. RBS Citizens, N.A.,*
  589 F.3d 274 (6th Cir. 2009) .......................................................... 14

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,*
  513 U.S. 251 (1995)........................................................................... 5

*Nat'l Bank v. Commonwealth,*
  76 U.S. 353 (1869)............................................................................ 9

*Nat'l City Bank of Ind. v. Turnbaugh,*
  463 F.3d 325 (4th Cir. 2006) .......................................................... 14

*Rose v. Chase Bank USA, N.A.,*
  513 F.3d 1032 (9th Cir. 2008) ........................................................ 14

*Skidmore v. Swift,*
  323 U.S. 134 (1944)......................................................................... 16

*Smiley v. Citibank (South Dakota), N.A.,*
  517 U.S. 735 (1996).................................................................... 5, 11

*SPGGC, LLC v. Ayotte,*
  488 F.3d 525 (1st Cir. 2007)........................................................... 14

*SPGGC, LLC v. Blumenthal,*
  505 F.3d 183 (2d Cir. 2007) ........................................................... 14

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ................................................................ 5

*Wachovia Bank v. Burke*,
  414 F.3d 305 (2d Cir. 2005) ................................................. 14

*Wachovia Bank, N.A. v. Watters*,
  431 F.3d 556 (6th Cir. 2005) ............................................... 14

*Watters v. Wachovia Bank, N.A.*,
  550 U.S. 1 (2007) ................................................... 12, 13, 14

*Wells Fargo Bank of Tex., N.A. v. James*,
  321 F. 3d 488 (5th Cir. 2003) .............................................. 14

*Wells Fargo Bank, N.A. v. Boutris*,
  419 F.3d 949 (9th Cir. 2005) ............................................... 14

## Statutes

12 U.S.C. § 1 ............................................................................ 3
12 U.S.C. § 24(Seventh) ..................................................... 3, 4
12 U.S.C. § 92 ......................................................................... 8
12 U.S.C. § 93(d) ................................................................... 3
12 U.S.C. § 371 ............................................................ 3, 4, 13
15 U.S.C. § 1639d ................................................................ 18

## Rules

Federal Rule of Appellate Procedure 29(a) ............................ 3

## Regulations

12 C.F.R. § 34.3(a) ................................................................. 4
12 C.F.R. § 34.4 ............................................................. Passim
12 C.F.R. §§ 34.4(a)(2) .................................................. 4, 15-16
12 C.F.R. §§ 34.4(a)(4) ..................................................... 4, 16
12 C.F.R. §§ 34.4(a)(6) ..................................................... 4, 16

## Other Authorities

Bank Activities and Operations; Real Estate Lending and Appraisals,
  69 Fed. Reg. 1904 ................................................................................ 15

Cal. Civ. Code § 2954.8 ................................................................... 15-16
Cal. Civ. Code § 2954.8(a) .................................................................. 16

Dodd-Frank,
  76 Fed. Reg. 43555 & n. 31 ............................................................... 17
  76 Fed. Reg. 43556 ........................................................................ 17-18
  76 Fed. Reg. 43549 (July 21, 2011) ................................................... 17

Dodd-Frank, Wall Street Reform and Consumer Protection Act,
  Pub. L. No 111-203 ............................................................................. 2
  Section 1044(a) ................................................................................... 4
  Section 1461 ....................................................................................... 4

## **INTRODUCTION**

The panel decision errs in matters of fundamental importance to the national banking system. The Petition for Rehearing En Banc therefore presents the rare case that justifies rehearing. The panel incorrectly inferred a Congressional intent to undo preexisting preemption determinations based on what the Court concedes to be inapposite legislation—provisions enacted by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No 111-203 ("Dodd-Frank"). The effective dates of the Dodd-Frank provisions relied upon by the Court pre-date the transactions at issue, and, accordingly, have no application to the facts of this case.

Even if this legislation had been in effect when the transactions at issue occurred, the panel's conclusion that Dodd-Frank altered the law material to this case was still mistaken. The panel comprehensively misinterpreted *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996) and the cases that decision rests upon. These cases establish the appropriate analysis under the Supremacy clause regarding the National Bank Act, even as amended by Dodd-Frank. That misreading of *Barnett* led to a compound of errors ultimately resulting in a conclusion that the California escrow statute is not preempted. For these reasons, en banc review is warranted.

## STATEMENT OF THE CASE

### I. THE OFFICE OF THE COMPTROLLER OF THE CURRENCY

The Office of the Comptroller of the Currency ("OCC") is an independent bureau of the U.S. Department of the Treasury with primary supervisory responsibility for national banks under the National Bank Act of 1864, codified at 12 U.S.C. § 1 *et seq.*, as amended ("NBA"). The OCC has comprehensive authority over the chartering, supervision, and regulation of virtually every aspect of the operation of national banks, including real estate lending and the establishment and maintenance of escrow accounts. The OCC is authorized generally to represent itself in litigation by 12 U.S.C. § 93(d), and to appear as amicus curiae in this Court by Federal Rule of Appellate Procedure 29(a).

### II. NATIONAL BANK POWERS TO CONDUCT MORTGAGE LENDING AND TO OFFER AND SERVICE ESCROW ACCOUNTS

National banks chartered by the OCC are statutorily authorized generally to engage in the business of banking and all activities incidental thereto. 12 U.S.C. § 24(Seventh). More specifically, the authority of a national bank to make, arrange, and deal in loans secured by interests in real estate is authorized expressly by statute, subject to both mandatory and discretionary requirements imposed by the OCC. 12 U.S.C. § 371. OCC regulations implement the statutory authority for national banks' real estate lending powers, which include requiring, establishing,

2

and maintaining escrow accounts. 12 C.F.R. § 34.3(a). With respect to this case, OCC regulations provide that national banks may make real estate loans "without regard to state law limitations concerning . . . (2) The ability of a creditor to require . . . risk mitigants in furtherance of safe and sound banking practices; (4) The terms of credit . . . ; and (6) Escrow accounts, impound accounts, and similar accounts." *Id.* § 34.4(a)(2), (4), (6).

## III. THE DODD-FRANK ACT EFFECTIVE DATES AND THE TRANSACTIONS IN THIS CASE

In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act. Section 1044(a) of Dodd-Frank, which addresses standards for federal preemption of certain state laws, became effective on July 21, 2011. Another provision of Dodd-Frank, section 1461, amended the Truth in Lending Act ("TILA"); it became effective on January 21, 2013. *Lusnak v. Bank of Am.*, 883 F.3d 1185, 1197 (9th Cir. 2018).

All the transactions at issue here—plaintiff's entry into a mortgage in July 2008, a refinance of the mortgage in March 2009, and a modification of the mortgage in February 2011—preceded the effective dates of both provisions. *Id.* at 1188-90; *see also* Excerpts of Record ("ER") at 60-70.

## STANDARDS OF REVIEW

1.  The OCC's identification of the scope of express and implied national bank powers under 12 U.S.C. §§ 24(Seventh) and 371 is entitled to judicial deference under the *Chevron* doctrine. *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995). The OCC's judgment as to the degree to which state restrictions interfere with the exercise of national bank powers is entitled to "weight" by a reviewing court. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 883 (2000).

2.  The OCC's interpretations of the NBA and other federal law that resolve ambiguities or fill gaps are entitled to judicial deference under *Chevron*. *United States v. Mead Corp.*, 533 U.S. 218, 231 & n.13 (2001); *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 739 (1996). The OCC's interpretations of its own regulations are "controlling" absent unusual circumstances. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

3.  A federal agency's preemptive regulations are reviewed to determine whether the agency intended to effect preemption and, if so, whether the regulation is within the scope of the agency's delegated authority. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 154 (1982). OCC regulations possess the same preemptive effect as federal statutes. *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010).

## **ARGUMENT**

## I.    **THE PETITION SHOULD BE GRANTED**

Appellee's Petition For Rehearing En Banc should be granted because the panel decision mistakenly relies upon provisions of Dodd-Frank that, because of their effective dates, have no application to this case.  Moreover, the panel decision conflicts with the pre-Dodd-Frank holdings of the United States Supreme Court, multiple decisions of this Court, and decisions of a majority of other courts of appeals, all of which either have endorsed or have been consistent with the OCC's preemption analysis.  The areas where Dodd-Frank did alter preemption outcomes, such as by eliminating preemption for subsidiaries, affiliates, and agents of national banks, have no impact on the appropriate application of *Barnett* to this set of facts.

This case is one of exceptional importance; the interpretation of *Barnett* is a matter of foundational consequence to the OCC and to the federal banking system. The panel's mistaken interpretation introduces significant uncertainty in a vital area of law that should be addressed by this Court on rehearing en banc.

### A. The Panel Decision Fundamentally Misapprehends *Barnett*

As a question of preemption of state law by federal law, this case is governed by the standard set forth in *Barnett*.  However, the panel decision misreads *Barnett* in multiple ways: 1) contrary to the panel's suggestion that

*Barnett* created a new, standalone "prevent or significantly interfere" standard, *Barnett* expressly applied "ordinary legal principles of pre-emption" based upon decades of national bank "implied conflict" preemption precedent and preemption analyses under other federal statutes; 2) contrary to the panel's disregard of the OCC's preemptive regulation on a basis not supported in the Administrative Procedure Act or elsewhere, Supreme Court standards prescribe a test for reviewing preemptive regulations not followed by the panel; 3) contrary to the panel's invention of a burden of proof on national banks to show a specific Congressional intent as to preemption, *Barnett* states an expectation that national bank powers "ordinarily" preempt contrary state law in the absence of express statutory text; 4) contrary to the panel's superimposition of a higher bar for showing interference by "large corporate banks," *Barnett* did not establish differential preemption standards relative to the size of the bank.

    1.  *Barnett* Endorsed Multiple Alternate Formulations of the Test for "Frustration-of-Purpose Implied Conflict Preemption," Not Just "Prevent or Significantly Interfere"

*Barnett*, like implied conflict preemption cases before and since, applies "ordinary preemption principles" in a variety of formulations, all with the same legal effect, to assess the degree of federal-state conflict presented. *Barnett*, 517 U.S. at 27. Accordingly, the "prevent or significantly interfere" phrase does not exclude all of the other formulations applied by *Barnett*. *Barnett* turned on the

conflict between 12 U.S.C. § 92, an authorization for national banks to sell

insurance as agent in "small towns," and a Florida statute that purported to prohibit

insurance sales for some of those banks.  The Court identified the preemption

analysis at work as a form of "irreconcilable conflict" between federal and state

law that did not require these laws to contradict each other, or to impose

impossibly conflicting duties upon national banks.  *Id.* at 31.  Instead, the Court

looked to conflict between the state restrictions on the one hand and the national

bank's exercise of its *powers* under the federal banking laws on the other:

> In using the word "powers," [12 U.S.C. § 92] chooses a legal concept
> that, in the context of national bank legislation, has a history.  That
> history is one of interpreting grants of both enumerated and incidental
> "powers" to national banks as grants of authority not normally limited
> by, but rather ordinarily pre-empting contrary state law.

*Id.* at 32.  The Court held that where federal law authorized the national bank to

sell insurance, the state's restriction of those powers "would seem to 'stan[d] as an

obstacle to the accomplishment' of one of the Federal Statute's purposes" in the

absence of federal law authorizing the restrictions.  *Id.* at 31 (quoting *Hines v.*

*Davidowitz*, 312 U.S. 52, 67 (1941)).

   *Barnett* makes clear that the "stand as an obstacle" formulation is no more

an exclusive test than any other formulation it recites, including "prevent or

significantly interfere."  In citing *Hines*, and in quoting a variety of differing

formulations for conflict preemption, *Barnett* implicitly endorsed the notion that

there is no single exclusive "constitutional yardstick" for conflict preemption.

*Hines*, 312 U.S. at 67. The interchangeability of these formulations is

demonstrated in *Barnett* itself:

> To say this is not to deprive States of the power to regulate national banks, where (unlike here) doing so does not prevent or significantly interfere with the national bank's exercise of its powers. *See, e.g.*, *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 247-252 (1944) (state statute administering abandoned deposit accounts did not "unlawful[ly] encroac[h] on the rights and privileges of national banks"); *McClellan v. Chipman*, 164 U.S. 347, 358 (1896) (application to national banks of state statute forbidding certain real estate transfers by insolvent transferees would not "destro[y] or hampe[r]" national banks' functions); *Nat'l Bank v. Commonwealth*, 76 U.S. 353, 362 (1869) (national banks subject to state law that does not "interfere with, or impair [national banks'] efficiency in performing the functions by which they are designed to serve [the Federal] Government").

*Id.* at 33-34 (alterations in original). Furthermore, a review of the cases quoted in

this paragraph demonstrates the Court's linguistically comprehensive, rather than

restrictive, approach to crystallizing this concept.

2. *Franklin* Demonstrates That "Significant Interference" with National Bank Powers Can Be Established Even by Narrow State Limits On National Bank Practices

*Barnett* also illustrates that narrowly targeted state restrictions can

impermissibly burden a national bank's exercise of its powers sufficient to

establish preemption. *See id.* at 34-35 (discussing *Franklin Nat'l Bank of Franklin

Square v. New York*, 347 U.S. 373, 375-79 (1954)). In *Franklin*, a New York state

statute prohibited the use of the words "saving" or "savings" by any financial

institution other than a state-chartered savings bank or savings and loan institution. *Franklin*, 347 U.S. at 374. The Supreme Court confirmed that national banks have the power to accept savings accounts, which necessarily entails the attendant power to advertise such accounts. *Id.* at 377. Accordingly, where the state restrictions burdened only the power to advertise using variations on a specific word, the Supreme Court held that restriction stated a conflict with federal purpose sufficient to preempt the state statute. *Barnett* relied upon *Franklin* for the proposition that "where Congress has not expressly conditioned the grant of a power upon a grant of state permission, the Court has ordinarily found that no such condition applies." *Barnett*, 517 U.S. at 35. Therefore, a proper application of *Barnett* should have resulted in the panel affirming the preemption of the California escrow statute.

      3. <u>The Panel Had No Basis for Disregarding the OCC's Regulations</u>

      The OCC's regulation, 12 C.F.R. § 34.4, directly addresses the issue in this case and specifies that statutes like the California statute are preempted by federal law. The panel disregarded the effect of that regulation without purporting to invalidate it, opining that the regulation is entitled to little, if any, deference. The panel suggested that the reasons for that conclusion were both substantive, in that the OCC misread *Barnett*, and procedural, in that the OCC did not conduct "its

9

own review of specific potential conflicts on the ground." *Lusnak*, 883 F. 3d at 1192, 1193, & n.4.

Both suggestions are baseless. First, as discussed above, the OCC correctly interprets *Barnett*, *see supra* at 9-12, and, as discussed below, numerous courts have sustained that interpretation, *see infra* at 15-18.

Second, the OCC's judgments concerning state provisions that interfere with national bank powers are grounded in its supervisory judgment regarding the potential effect of those interactions on bank activities. By the time of the promulgation of the 2004 regulations, the OCC's judgement had been informed by several years of litigation experience with the *Barnett* analysis. Most important, the panel identifies no authority in the Administrative Procedure Act or elsewhere that would justify its disregard of a duly promulgated federal regulation, the validity of which has not been challenged. *See Smiley*, 517 U.S. at 739. The Supreme Court set forth the procedure for reviewing a preemptive regulation in *de la Cuesta*, 458 U.S. at 154, and the panel did not purport to apply the prescribed procedure.

4. The Panel Inverts the *Barnett* "Ordinarily Preempting" Expectation

*Barnett* observed that the history of national bank implied conflict preemption litigation is one of interpreting grants of powers to national banks as "ordinarily pre-empting contrary state law." *Barnett*, 517 U.S. at 32. By contrast,

the panel inverts that expectation with the requirement that the bank "affirmatively demonstrate that Congress intended to preclude states from enforcing their state escrow interest laws." *See Lusnak*, 883 F.3d at 1191. The panel therefore purports to displace the *Barnett* implied conflict preemption standard with a requirement that the bank show the equivalent of express preemption.

5. The Panel Superimposes a Differential Burden of Proof Upon "Large Corporate Banks" that Has No Basis in *Barnett*

The panel also erred in discerning a Congressional contemplation that "creditors, including large corporate banks like Bank of America" can comply with state escrow interest laws without any significant interference with their banking powers. *Id.* at 1196. To the contrary, the effect of state restrictions on national bank powers is assessed independently of the size of the institution, and *Barnett* suggests no such sliding scale. Furthermore, large banks have made many successful preemption arguments, with no indication of a differential analysis. *See, e.g.*, *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007); *Franklin*, 347 U.S. at 375-79.

## B. The OCC's Interpretation of *Barnett* Has Been Adopted By the Supreme Court and Multiple Courts of Appeals, Including the Ninth Circuit, and is Reflected in the Escrow Regulation

Numerous federal courts, including the Supreme Court and this Court, have either endorsed the OCC's analysis of *Barnett* or reached conclusions consistent

with that analysis. This same analysis is reflected in the OCC's escrow regulation, 12 C.F.R. § 34.4.

The OCC construes *Barnett* and the cases on which it builds, including *Franklin*, as establishing an analysis that begins with identifying the nature and scope of the national bank powers at issue: in *Barnett*, the power to sell insurance; in *Franklin*, the power to advertise savings accounts; here, the power to establish and administer escrow accounts in connection with residential real estate loans under 12 U.S.C. § 371. The analysis next assesses the degree of interference with those national bank powers caused by the challenged state restriction; if the burden rises to the level of the formulations recited in implied conflict cases such as *Barnett* and *Franklin*, the state restrictions are preempted. Where the effect of the state measure is de minimis, or is an aspect of generally applicable commercial infrastructure, or where federal law provides otherwise, the state measure is not preempted.

The OCC's application of *Barnett* has been approved by federal courts at every level. The Supreme Court's opinion in *Watters* also dovetails with the OCC's interpretation of *Barnett* as applied to state licensing restrictions on national bank operating subsidiaries. The precise holding of *Watters* was superseded by Dodd-Frank's restriction on the preemptive effect of powers exercised through subsidiaries, affiliates, or agents, but the reasoning of *Watters* and other similar

cases remains, demonstrating widespread judicial agreement with the OCC's application of *Barnett*'s principles. This Court has agreed with the OCC's *Barnett* analysis multiple times.[1] *Gutierrez v. Wells Fargo Bank*, *N.A*., 704 F.3d 712 (9th Cir. 2012) (order of posting overdrafts); *Martinez*, 598 F.3d at 549 (mortgage refinance fees) (reliance on OCC regulation 12 C.F.R. § 34.4); *Rose v. Chase Bank USA, N.A*., 513 F.3d 1032 (9th Cir. 2008) (disclosures on convenience checks); *Wells Fargo Bank, N.A. v. Boutris*, 419 F.3d 949 (9th Cir. 2005) (holding superseded) (state licensing of operating subsidiaries) (OCC Amicus Brief); *Bank of Am. v. City and Cty. of San Francisco*, 309 F. 3d 551 (9th Cir. 2002) (power to charge ATM fees) (OCC Amicus Brief); *see also Am. Bankers Ass'n v. Lockyer*, 249 F. Supp. 2d 1000 (E.D. Cal. 2002) (required state disclosures) (OCC Amicus Brief).

---

[1] Moreover, the panel decision creates a split with the holding or reasoning of decisions in the First Circuit, *SPGGC, LLC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007) (OCC Amicus Brief); Second Circuit, *SPGGC, LLC v. Blumenthal*, 505 F.3d 183 (2d Cir. 2007) (OCC Letter-Brief); *Wachovia Bank v. Burke*, 414 F.3d 305 (2d Cir. 2005) (holding superseded) (OCC Amicus Brief); Fourth Circuit, *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325 (4th Cir. 2006) (holding superseded) (OCC Amicus Brief); Fifth Circuit, *Wells Fargo Bank of Tex., N.A. v. James*, 321 F. 3d 488 (5th Cir. 2003) (check cashing fees) (OCC Amicus Brief); Sixth Circuit, *Monroe Retail, Inc. v. RBS Citizens, N.A.,* 589 F.3d 274 (6th Cir. 2009) (power to garnish); *Wachovia Bank, N.A. v. Watters*, 431 F.3d 556 (6th Cir. 2005) (holding superseded) (OCC Amicus Brief); *Ass'n of Banks in Ins. v. Duryee*, 270 F.3d 397 (6th Cir. 2001) (insurance sales under Gramm-Leach-Bliley Act of 1999) (OCC Amicus Brief); Eighth Circuit, *Bank One, Utah, N.A. v. Guttau*, 190 F.3d 844 (8th Cir. 1999) (OCC Amicus Brief); and the Eleventh Circuit, *Baptista v. JP Morgan Chase Bank, N.A*. 640 F.3d 1194 (11th Cir. 2011) (check cashing fees).

Finally, the OCC's interpretation of *Barnett* lies at the heart of the OCC's preemption regulations, including the one at issue here, 12 C.F.R. § 34.4. *See* Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1910-1913. The preamble notes the various formulations *Barnett* invoked for state restrictions with national bank powers that would trigger preemption: "forbid or impair significantly;" "prevent or significantly interfere;" "unlawfully encroach;" "destro[y] or hampe[r];" "interfere with or impair [national banks'] efficiency." *Id.* at 1910 (collecting quotations and citations from *Barnett*). Indeed, the preamble observed that the Supreme Court in *Hines* and *Barnett* recognized that frustration-of-purpose conflict preemption principles can be articulated in a variety of formulations that do not yield substantively different legal results. *Id.*

The preamble then noted that the OCC had applied these principles in identifying state restrictions on national bank real estate lending powers that would be preempted, reflecting the OCC's "experience with types of state laws that can materially affect and confine—and thus are inconsistent with—national bank real estate lending powers." *Id.* at 1911. The list of preempted state limitations resulting from that application of OCC experience encompassed 12 C.F.R. §§ 34.4(a)(2) (including risk mitigants), (a)(4) (including terms of credit), and (a)(6) (including escrow accounts).

## C. The District Court Correctly Applied *Barnett* Principles To Hold the California Escrow Statute Preempted

The district court properly applied *Barnett* in a way consistent with the OCC's interpretation of *Barnett*. First, the district court determined that the management of escrow accounts is a national bank power associated with the power to lend money secured by real estate. ER 8. In so concluding, the district court relied in part upon informal OCC opinions specific to escrow services, which it found persuasive. *Id.* at 9.[2] Second, the district court then determined that the state statute at issue significantly interfered with the exercise of those powers. *Id.* at 9-10. Specifically, the two-percent interest requirement set forth in California Civil Code § 2954.8 would allow a state to (1) impose additional burdens on national bank lending activity, (2) add a fixed and inflexible interest rate on national bank escrow account activity, and (3) subject national banks to potentially diverse and duplicative requirements across other states. *Id.* Accordingly, under

---

[2] The district court was inaccurate in one respect: the court incompletely stated that Dodd-Frank clarified the level of deference due OCC opinions regarding NBA preemption so that courts need not apply *Chevron*. ER. 6. Instead, Dodd-Frank preserved *Chevron* deference for that part of the preemption determination that identifies the nature and scope of national bank powers. Dodd-Frank provides only that the OCC's opinion as to the degree of conflict receives a variable degree of deference under *Skidmore v. Swift*, 323 U.S. 134, 140 (1944), deference that nonetheless acknowledges some measure of agency expertise, *see Geier*, 529 U.S. at 883. As the panel decision correctly noted, that *Skidmore* provision did not represent a change of law. *Lusnak*, 883 F.3d at 1192.

prevailing case authority, the district court correctly determined that

section 2954.8(a) was preempted.[3]

## D. Dodd-Frank Does Not Control the Outcome in This Case

As discussed above, Dodd-Frank is inapplicable to this case because its

effective date post-dated every transaction in the case. But even if Dodd-Frank

had purchase, it would not alter the application of the *Barnett* analysis.

In 2011, the OCC revisited its regulations in light of Dodd-Frank. 76 Fed.

Reg. 43549 (July 21, 2011). The OCC concluded, among other things, that Dodd-

Frank's invocation of the "prevent or significantly interfere" standard of *Barnett*

did not represent a "new stand-alone" preemption standard, but rather represented

a touchstone for the full *Barnett* conflict preemption analysis, including the

multiple formulations for state interference. This conclusion was supported by the

legislative history of Dodd-Frank (76 Fed. Reg. at 43555 & n.31) as well as by the

OCC's litigation experience with a nearly identical "prevent or significantly

interfere" standard for preemption in an earlier statute, the Gramm-Leach-Bliley

Act of 1999 ("GLBA"). The most prominent decision in that series of litigation

treated the GLBA "prevents or significantly interferes" text as "a reference to the

---

[3] The district court found it unnecessary to apply the OCC's applicable regulation, 12 C.F.R. § 34.4, which would have produced the same result as the *Barnett* analysis.

whole of the *Barnett* analysis." 76 Fed. Reg. at 43556 (citing *Duryee*, 270 F.3d at 406).

The district court correctly observed that Dodd-Frank's changes to existing law had no application to this case: the statute simply reaffirmed that *Barnett* is the preemption standard for the OCC and the courts to apply. ER 5. The district court also concluded that a Dodd-Frank amendment to the TILA Act, codified at 15 U.S.C. § 1639d, had no application for two reasons: 1) the statutory text bore no indication that Congress intended to alter the status quo; and 2) the transactions at issue, ending in 2011, pre-dated the effective date of the TILA amendments of January 21, 2013, rendering them inapplicable to the case. ER 11-13.[4]

The panel decision is inconsistent as to the effect of Dodd-Frank. The panel agrees that Dodd-Frank preserved the *Barnett* preemption standard. But as argued above, the panel misunderstands the nature of that standard. Notwithstanding that, and notwithstanding that the Dodd-Frank effective dates ensure that the provisions would not apply in any case, the panel repeatedly reviews the issues of the case through the lens of Dodd-Frank. *See, e.g.*, *Lusnak*, 883 F.3d at 1189 (considering policy underlying Dodd-Frank). Most remarkably, the panel gives weight to its perception of Congressional intent revealed in the amendments to TILA, even

---

[4] The legal inapplicability of the TILA amendment to this case renders it unnecessary for the OCC to take a position upon the interaction of that amendment with the NBA and the OCC's implementing regulations, if any.

though the panel acknowledges that those amendments were not effective until after the transactions at issue here. *Id.* at 1194-97. This internal contradiction provides an additional reason why the Court should reconsider its opinion.

## <u>CONCLUSION</u>

The OCC respectfully submits that Appellee's Petition For Rehearing en banc should be granted.

DATED:     April 23, 2018          Respectfully submitted,


                                   *s/ Douglas B. Jordan*
                                   KAREN SOLOMON
                                   CHARLES M. STEELE
                                   GREGORY F. TAYLOR
                                   DOUGLAS B. JORDAN
                                   MICHAEL K. MORELLI
                                   Office of the Comptroller of the
                                   Currency
                                   400 7th Street S.W.
                                   Washington, DC 20001
                                   (202) 649-6300

                                   *Counsel for Amicus Curiae*
                                   *Office of the Comptroller of the*
                                   *Currency*

**Form 11.    Certificate of Compliance Pursuant to
9th Circuit Rules 35-4 and 40-1 for Case Number** <u>14-56755</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the back of each copy of the petition or answer.*

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition (check applicable option):

☒ Contains 4,074 words (petitions and answers must not exceed 4,200 words), and is prepared in a format, type face, and type style that complies with Fed. R. App. P. 32(a)(4)-(6).

**or**

☐ Is in compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

Signature of Attorney or
Unrepresented Litigant   s/ Douglas B. Jordan          Date  Apr 23, 2018

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 23, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Douglas B. Jordan*
Douglas B. Jordan

*Attorney for Amicus Curiae*
*Office of the Comptroller of the*
*Currency*

April 23, 2018